Page number 25-621 is enacted. Stanford de Trabajadores Unidos et al. is up. This is Scott Bessent, and he's the founding deputy secretary of the treasury et al. Mr. Joshi, for the balance. Mr. Henry, for the affiliates. Morning, counsel. Mr. Joshi, please proceed when you're ready. Good morning. May it please the court, I'm Andan Joshi for the accountants. Congress enacted section 6103I of the Internal Revenue Code to limit law enforcement access to confidential taxpayer records. That provision generally requires prosecutors to obtain a court order to access information in a particular taxpayer's IRS filings. Here, however, the district court held that 6103I2 allowed the IRS to disclose millions of taxpayer addresses to ICE without a court order. That was error. I2 is not designed to give law enforcement easy access to taxpayer addresses without a court order. It assumes that law enforcement already has the taxpayer's address and will provide it to the IRS to obtain access to third-party sources of information. So the way 6103I works is that there are a set of documents within the IRS that are independent of information the taxpayer submits to the IRS, for example, in their 1040 or in their W7 application for an ITIN number. These might arise from an IRS investigation into a third party where they obtain information. They might arise from a police raid, for example. That's one of the examples the IRS gives in its manual, where the information comes from a third party, not voluntarily from the taxpayer. I'm sorry, I just have some questions about how this works. Does it include when your bank sends in information about your interests? If the bank is... Or when your employer reports your income? So if your bank or employer sends in information about you, that would be protected information. That would be taxpayer-returned information. Even though it's submitted by... Yes, it's by or on behalf of the taxpayer. But if they, in doing so, the employer shows its address or the bank shows its address, that's not protected information? I'm sorry. Presumably, in sending this in, the bank is going to reveal its own address or the employer will reveal its own address. That's not protected. Yes, I don't believe that is not protected as to the individual taxpayer. It might be protected as to the bank. However, for example, if the information comes to the IRS involuntarily of the taxpayer, if it's seized in a police raid of a business on a RICO case, somehow those business records end up at the IRS. Some other law enforcement agency, if it knows of that, can use I-2 to get access to those records if it follows the procedures set out in I-2. Those are not... All of those records, including, say, they have copies of the W-2s for... Yes, that's the IRS's position. I don't know that it's been litigated. That's the IRS's position. 6103 distinguishes between taxpayer return information and other types of return information. That's crystal clear. Yes, well, the underlying purpose, when it was enacted in 76, was to encourage people, the taxpayers, to voluntarily participate in the tax system. There are, of course, penalties for not participating in the tax system, but Congress said, in the wake of the Nixon scandal, said that's not sufficient. We want to preserve the integrity of the tax system by saying, when we force you, taxpayer, to submit this information, we're going to protect it as if that information were in your own home, and we're going to require a court order if law enforcement wants to get that information. And they have various provisions for that. A-1 is the primary one for criminal investigations. I'm sorry, I-1. I-5 was enacted in 82. That says prosecutors have to get a court order to get the location of a fugitive from justice. And the IRS took the same position for a long time, saying law enforcement cannot use I-2 to get these types of addresses. Law enforcement must provide us the name and address of the taxpayer in order to get this third-party information if it exists for a particular taxpayer. The type of information you're talking about, many taxpayers may not even have third-party information because they're not going to be investigated by the IRS or have, you know, independent sources of information. But what the IRS did here in response to the new administration's immigration agenda is say, we're going to rethink what I-2 means. And now- And they're basing their rethinking on I-2C because I-2C does have a carve-out for taxpayers. It does. It does. So, I mean, nobody disputes that if information is thought outside of taxpayer identity and taxpayer identity is disclosed as it can be, as it must be actually under I-2C, then that taxpayer identity information can be used in the way that it's thought to be used here, as long as the request actually was accompanied by a request seeking other information. Again, it's basically right. The one caveat I would say is Congress's premise in allowing that type of disclosure, because initially it didn't allow that disclosure. In 76, it did not allow that disclosure. In 78. In 78, there was a technical fix in 78 because the theory is law enforcement already has this information. It doesn't make any sense to the IRS to then not be able to provide it back, simply because it came from taxpayer returns as opposed to some other source. And so we're going to have this technical fix. We're going to treat it as the type of information that can be disclosed without a court order in response to a valid request. So can I just add to this? So that's what I'm – what was – what's the reason for the carve-out in C for taxpayer identity? I mean, the way you just articulated it, as I understood it, was that, look, if somebody's asking for the information, they have it anyway, so why not just let it be turned over? But why? If they have the information anyway, then why turn it over? It doesn't tell me what's the affirmative interest in the carve-out for taxpayer identity. And what is it? Well, I think from the 78 legislative history, it was at least ambiguous. I mean, what you said made a lot of sense. Perhaps if they didn't enact that exception, the law would have been – allowed the IRS to turn that information back over to the law enforcement agency that requested it. And what – you know, Congress was concerned about taxpayer addresses just like any other piece of information that a taxpayer might file in their tax return. And so they just wanted to clarify that this is – in this sort of situation, it's not – it doesn't raise the same privacy concerns and the same threats to – not only can, but must be turned over, if I'm understanding this correctly, right? Because under ITC, when there's a request from an agency, the general bar against turning over – I forget the term – taxpayer return information? It doesn't apply to taxpayer identity. Correct. The current formulation does not apply to taxpayer identity. And why? Why? Why was it done that way? Why is there the carve-out for taxpayer identity to allow taxpayer identity? I think Congress might have been – you know, they wanted to clarify the law. They also might have been less concerned about the privacy implications of the IRS confirming that the name and address that the law enforcement agency provided was, in fact, the name and address that was reflected in the tax returns that identified the taxpayer for purposes of these – this other type of information that was a legitimate purpose for – under I-2, the third-party information that law enforcement could see. So I would say it's just a technical fix to sort of streamline. But a fix – I think you're assuming that I know more than I do. I think I'm just not – I'm not understanding what's it fixing. What – why the affirmative – there must have been an affirmative interest on the part of Congress in assuring that the taxpayer identity information can be transferred from the IRS to – taxpayer identity, if I said that right, can be transferred from the IRS to the requesting agency. Sure. Why? Well, in the 76th law, that wasn't clear, right? There was no – taxpayer identity would have been taxpayer return information. It wasn't clear that the IRS could hand that over. Exactly. So why did it need to be clear that it can be transferred? Well, I mean, when the IRS violates or an IRS employee violates a provision of these protections, they're subject to criminal liability. I get that. But why did – why should they not be subject to criminal liability? I'm trying to understand, what's the policy interest in making sure the taxpayer identity information can be turned over? Somebody must have thought there's a reason we need to make sure the taxpayer identity information can be turned over. What is – what's the reason? Well, I think it was simply to ensure the IRS, when they do send that back, that information back, that it is – it's not going to lead to any concerns about liability on the individuals who are – the employees who are doing that. Why do we – why wouldn't we want them to be liable? Because there was – well, once again, if the law enforcement agency already has that information, there's less of a privacy concern of turning that back over. But they might have wrong information. Well, they have. So suppose it's – they have an old address. The law enforcement has an old address. And they say, I have – this is the name of the person. Here's the best address I have. And then it could be that the response would be, okay, well, that's the address you have. The IRS isn't supposed to correct that. They're not supposed to turn over the correct address. And, yeah, you requested it with the wrong address or an old address, but there's no reason for a carve-out for taxpayer identity if the policy determination was made that, look, that's okay. They've got the wrong address. Fine. They've got the wrong address. We're going to turn over all the other information that they've asked for, but the one thing we're not going to do is correct the address. No, well, they shouldn't turn over all the information. If they can't match up the name and address, it's not a valid request. No, no, no. Suppose I disagree with you on that. I mean, I just assume for present purposes that I don't think there's a burden on the IRS to make sure that the address that's in the request is actually the current correct address. That may be an argument that's out there. It's unclear to me how forcefully that argument is being presented. But let's just suppose, and you might resist the assumption, but let's just suppose that I don't agree with you on that. That I think, just for purposes of this question, let's suppose that there's a name and an address that turns out to be an older address, but that's not enough to turn off the entire spigot that you still have to turn over. And I'm not talking about a case in which only address information is being requested. I'm talking about a case in which the other things that everybody agreed can be requested is being requested. That just because the address is an old one in the request, it doesn't mean that the IRS doesn't have to turn over everything. They turn over the other information that's being requested that you agree can be requested and needs to be turned over. Why was it the decision made that in the course of turning over that other information, the IRS also turns over the address? I don't know that a deliberate decision was made in that context. But it definitely was, because that's the whole point of I2C, is that to make sure the taxpayer, as you rightly say, there was a question about whether taxpayer identity information could be turned over. And there was a further decision made to make sure that it can be. Right. I think the concern that was before Congress's mind was that under the original 76 law, nothing could be turned back over that was taxpayer identity related. It was a technical fix to the law. It wasn't intended to create this loophole where law enforcement agency could submit. What was the problem that it was technically fixing? You know, all we have is the legislative history of the 78 report. And it mentions this problem that there was this – they were concerned that the IRS could not turn – identify the material it was turning over with respect to the taxpayer's name and address. So that the act of turning over things that can turn over would necessarily confirm the accuracy of the address? That makes sense, I guess. Yeah. Because we respond and we're going, okay, yeah, we do have somebody on this – I mean, I don't want to – Address. I mean, the whole point is that this was a technical fix to sort of clean up the operation of the statute. It wasn't to create this loophole that allows law enforcement to, you know, send over a spreadsheet of 1.3 million addresses and ask for updated addresses for all these taxpayers without any request to go after the types of information, third-party information that IT was designed to facilitate without having to go to court and get a court order. And so I take your point, Your Honors, that, you know, it doesn't seem like much, but that's the whole point. It was a technical fix to the statute in 82 – I mean, I'm sorry, 78. And, you know, they – in 82, when Congress wanted to allow prosecutors to look for the location of a fugitive, it enacted I-5. It didn't – it didn't try to shoehorn that into I-2 and say you can do that and get that information without going to – without going to a court and meeting with scripts vendors. I'm not – let me see if I can – I'll have to ask it my way. The statute literally does not support your position. I-2 says they can get disclosure – return information for use in criminal investigations. And we know from C that mailing address is part of the information that would be included in that term. That's just clear. There's nothing you can say to refute. If that's all we're looking at, that is absolutely clear. Your Honor, that's exactly our point. That's what the district court held and what the district court – Wait, wait. So that's straightforward. Now, I'm trying to understand one argument you're making is, well, it's – as best I can understand, it's a little strange that in order to get that information, which the statute says they can, they have to give an address. Do you think that's really dispositive? Because as my colleague has said, it doesn't say what address they have to give. The government simply has to present whatever they – wait, let me finish. Okay? So we're back down to the statute says because of C, the mailing address is clearly return information. And I-2 clearly says the government can get return information for use in criminal investigations. What else is there apart from what you think is strange that you have to give an address to get an address? I hear your argument, and maybe it is strange. Is there anything else? The legislative history, I must say, I waded through it. First of all, we're skeptical of that kind of evidence, and I don't think it's powerful here. What else is it that gives your argument real weight other than this strange address in B and address in C? And that seems strange to you, that you would require someone to give an address when they're seeking an address? Anything else? Well, a few points, Your Honor. First of all, I don't – in B, when it talks about the name and address, if you ask me what my name and address is, and I give you my name, and I give you my childhood address, you would not think I was very honest. So it's not just any address. It has to be something that is the address of the taxpayer. So I think it's a little bit more than strange. It's incongruous. I agree that if you just look- You've got to have more of an argument than that. Okay, I hear you. Go ahead. No, I understand. I understand. They shouldn't overtly lie. You're saying, okay, let's accept that. But still, they can come in with the wrong address and be mistaken. And the statute doesn't appear to prohibit that. They could have a 2015 address. That's the best we have, and we have to give you an address. Here it is. It turns out it's 2015. It turns out IRS has the current information, and that's what they want. Now, how is that forbidden? Why? I'm not getting it. Well, we talked about B. There are a few other structural issues with- No, they've got to follow the rest of the requirements under B. Okay. But go ahead. What else? So we have I-4, which talks about submitting taxpayer return information in court proceedings. It does not carve out the taxpayer's address. I think for the reason is that Congress anticipated the law enforcement agency would already have- So you think there is a positive requirement of court support for this request? Is that one of your arguments, that you have to have a court order getting to be able to get this under the statute? Because, again, I don't see that. Where do you think you're getting that? There are other provisions that do say that with respect to other matters. I don't see it with respect to return information in this particular provision. Where do you see it? Well, certainly A-1 and A-5 talk about getting a court order to get taxpayer information. They are broader than I-2. Right. Admittedly. But that is the general premise of 6103I that sort of distinguishes between the protections- It's surprising that wouldn't be in B if that was a requirement. Court order. Seems to me requirements, and then they list the things that the statute assumes you've got to come with. And if court order was one of the things, I would expect it would be there if that's what Congress meant to say. Right. And the reason 6103I-2 does not have the court order requirement is that the expectation is that the information being requested is a third-party sourced information, not taxpayer-addressed information. The alternative would be every filing a taxpayer makes throughout their life to the IRS, every tax filing, all of their addresses are free gain for law enforcement. So if the law enforcement says- For use in a criminal investigation. We're only talking about- Yes. So it's not everything is open in a situation where it's certifiably for use in a criminal investigation. That's the exception we're talking about. Right. All 6103I is about- Most of it is about criminal investigation. That's not everything. That doesn't mean in every situation when someone comes in- No. Yes. No. It means though every address the taxpayer has ever filed with the IRS becomes free gain without a court order for criminal law enforcement to ask the IRS, give us this taxpayer's address history. Okay. And- If they have a criminal investigation purpose for seeking it. Yes. If they have a criminal investigation purpose for seeking it, which isn't-I mean, all they have to do is, you know, identify the statute and provide specific reasons for the information. If they're looking for current addresses, as ICE is doing here, that's easy to meet. They just say, we want to find this. It's always relevant to try to find the individual. On that score, I understand that a lot of the underbrush here is about finding the individual. I actually didn't understand that that's the rationale that's being put forward in the MOU for getting the latest address because I thought the rationale that's being put forward is not that we want to be able to find them so that we can do various things, including, you know, as you suppose potentially have several rules, but it was that knowing the current address would let you know whether the-and then comparing that to the date of the removal order would let you know whether it's beyond 90 days. So that's the element of defense. It's not actually finding the person in order to be able to implement criminal process. It's to prove a violation of the statute. So a couple of points, Your Honor. First of all, the MOU, the very first paragraph talks about the desire to identify, exclude, and remove aliens. I agree with that. I mean, that's-I'm not going to suggest that that's, you know, completely out of the picture. I guess it's sort of like saying that everything that's being done is informed by a priority of an administration, which I don't deny that point. But I'm just saying that as I understand it, and as the district court opinion says this, and I think some of the readings for this, the primary reason, the primary statement even for seeking address information here, it relates to an element of the offense, which is to show that it's beyond 90 days past the removal order date. And one thing that's interesting about the MOU is that it requires, as I understand it, there has to be a removal order, and you have to disclose the particularities about that. This MOU is limited to removal orders in that sense. However, the MOU talks about other federal criminal laws, just like the statute does. And the IRS and the defendants here have taken the position that the MOU is sort of window dressing. If ICE came back tomorrow outside the MOU, they would still have to comply with the request for address information for other types of crimes. And we'll say the statute, when it talks about the relevance of information, doesn't talk about elements of the offense. So, once again— It doesn't. I take that point. But as I understand the theory that's being put forward here, that's the theory, is that the address information, current address information, bears on whether the person has overstayed 90 days beyond the date of the removal order. I mean, that is what they've put forward. I think it's a—it seems perplexing that they could do that on a bulk basis, say that it's relevant in each case, depending on the information they get back. We don't have information about how ICE is actually—  I mean, doesn't it—isn't it— Well, they would—they would only get back the date, the address, and potentially the fiscal—the tax year. The tax year, right. If the removal order was 10 years ago and it's still in the tax year— They should not get back the—where that information comes from. So, it doesn't necessarily have to come from a 1040. I don't know if— Well, wherever the information comes from. The idea is, suppose you have a situation in which the removal order was 10 years ago. Yeah. And then the latest address, wherever it comes from, a return or wherever it comes from, is FY 2025, or tax year 2025. I'm speaking of fiscal year, it's not tax year. So, 2025. Then that would tell you something about whether the person's overstayed by beyond 90 days. It's possible. We, you know, once again, they could say we want this to locate the individual, and that would also be possible. So, I mean, that's not really a limitation in this context. And, you know, ICE wears two hats, and they have a criminal hat and a civil hat, and they can achieve civil purposes wearing their criminal hat, which I think even the district court recognized but thought it was—that was legitimate. I mean, they are allowed to use this information to contact a target and, you know, essentially propose a plea bargain that says if you turn yourself to court or turn yourself over to civil authorities, we won't prosecute.  That's wearing their criminal hat. Which is kind of a natural part of the criminal process that often occurs.  Whether that, you know, is or is—independently is or is not a permissible use of this information, the whole scheme depends on ICE being able to make a bulk request for, you know, for taxpayer—updated taxpayer addresses. Instead of the sort of one-off request that ICE was historically used for by prosecutors to get this sort of third-party source information, it would go—you know, it would go to— I think it has been historically the standard request. You don't dispute that in—if there's a standard request that involves someone who would be within the compass of 12—of a U.S.C. 1233—1253A for overstaying beyond 90 days, you don't dispute that if there's a standard request that encompasses other return information, you know, the kind of standard types of stuff, and then the address—the current mailing address would have to be turned over, and the current mailing address could be used in exactly the same way that it's being sought and would be used in this situation, understanding that here that's the only thing that's being sought and it's being done in bulk. Well, I guess I will go back to your earlier premise. I would read the address that has to be turned back over to be the same that was applied. I know Your Honor said that that was the same that was used to apply, but that— Okay. Go ahead and finish that, because I have a question about that premise, and then we'll move on. Yes. But otherwise, I would agree with Your Honor that the answer to the question is yes. Okay. Then on the premise—so if I'm understanding right, if your argument is right, that the address has to actually be the current mailing address, the address put forward in the request has to be the current mailing address. That's your position, right? Yes. If that's true, then if you have a situation in which it's a standard one-off request, and it's for other return information that's directly relevant to a criminal prosecution, and the requester happens to not have the current mailing address, is your view that what Congress intended was that because the requester, who has an—even in your view—an entirely legitimate law enforcement interest in seeking that information to prove, let's say, an element of the offense that has to—that's proven by not the return information— not the address information, but return information that they're seeking, that the IRS is duty-bound to say, no, we can't give you that return information because you haven't given us the right mailing address? The IRS has to—one caveat to that position. The I-2 allows for information on prior tax years, so it could be a plausible reading of the statute that if they're providing the address for a plausible tax year, a past tax year, they can provide a prior address. I think the better reading of the statute, though, is that not any old address would work. But even if the court rejects that and says an old address would work for a legitimate request for third-party information at I-2, in which case the IRS has to then provide the new current mailing address, that still doesn't justify this situation where they're seeking— the address is only on a bulk basis without going through the court process that I-1 and I-5 require for location information. If they set up a computer, it would send in a request every minute because they're just going to be changing the name and address, so that, in fact, they were submitting 3,000 requests a day, but individually. Would that be okay? No, once again, I don't think the proper— Individual requests? Well, I think they have set up a system. That's how they process the $1.3 million. I don't think that the issue turns on whether they do it in a single spreadsheet or a computerized, worn-off request for information. It doesn't matter. The volume really doesn't matter. The volume doesn't—I mean, no, legally it doesn't matter if they did this for one or for several million. But when you allow them to—if you allow them to simply seek addresses, then that makes them able to seek it on a bulk basis or on a seriatim basis. When you limit I-2 to third-party sources of information, it necessarily requires them, when filling out the request, to identify, you know, why that particular piece of information is relevant to a criminal investigation. As a practical matter, that, I think, that forecloses the sort of bulk processing scheme that they have here. Okay. I understand your point. I'm over my time. Thank you, Cassidy. We'll give a little time for rebuttal. Mr. Hendricks? Thank you, Your Honors. Aaron Hendricks for the appellees, and may it please the Court. Plaintiffs here seek relief that would prevent the IRS from sharing information with DHS despite a statute that mandates such disclosure and despite both agencies' compliance with that statute. As a threshold matter, plaintiffs lack standing to maintain this suit. And regardless, the District Court acted well within its discretion in denying the motion for preliminary injunction. You started by saying the statute mandates it. Is it right that since the statute was enacted in 1978, this has never happened? I believe it's correct that this particular request from this agency— —has never been successful. I'm not sure if a request for addresses alone has ever been attempted, but the— They came up with the Selective Service. I thought that was a lot of the underbrush was it was about the Selective Service. Everybody knew that this was a possibility. Right. As to the Selective Service example, no request was actually made through 6103-I-2 to find information on people who had failed to register. Right. And it could be no request was made because nobody thought it was possible. I guess all I'm trying to nail down is that whether you're right or wrong about what you see to be a statutory mandate, this dynamic has never played out before in how many ever decades has passed from the time that this IPC was enacted. The IRS has never been forced to wrestle with whether this is mandated or not. The statute seems to imply that it's mandatory. And as to the Selective Service example, it wasn't that they didn't go forward because they thought it wasn't mandatory. And in fact, the memoranda on the Selective Service issue never made a clear conclusion. It said it's a difficult question, but never made a clear conclusion. And probably due to policy reasons, never actually sent over an official request to the IRS. So I'll begin with standing if there aren't other questions in the immediate. I have some questions about how this works. Okay. Is it okay? So the argument here is that the MOU is just a reduplicating the statute, statutory requirements. One of the things the MOU says in both Section 5 and 6 is that ICE will make these requests for information. Correct. Correct. Is ICE one of the statutorily authorized entities to make a request for information? I don't see them on the list in 2A. It's a head of an agency. And as to these examples, the head of ICE, Todd Lyons, signed. ICE is an agency? I thought DHS was the agency. ICE is a component of an agency. I believe pursuant to 6103, the head of an agency at ICE qualifies. Excuse me? Is that missed somewhere? Is there a definition somewhere? I would have thought the head of the agency would be the agency or DHS. Correct. My understanding is that the head of ICE. I mean, it's a pretty carefully enumerated list. And it doesn't include anybody involved in immigration enforcement other than if it was the criminal immigration enforcement, the deputy attorney general, or the FBI. And if the requests were coming from the Department of Homeland Security, or the head, or the secretary, that would make sense. But you're defining ICE as its own independent agency? For purposes of getting information. That's not the list. I mean, I don't know how you can. I don't understand your definition, how you're reading the statute. I mean, there's a reason here. It's here to make sure that this is done at a very high level. Correct. You know, that's one of the protections, the very highest levels of an agency. And I thought ICE was part of the Department of Homeland Security agency. Is that right? Do I have the flowchart right? That's right, Your Honor. Okay. They're not their own independent agency. Nor is Customs and Border Enforcement. The components is what they are of the department. If I go to Department of Homeland Security, am I going to see ICE, like, under lots of boxes, and ICE will be under there somewhere? Yes. As part of the agency known as the Department of Homeland Security. Yes. So it doesn't qualify under the statute. Unless you've got a definition of agency, and I could have missed something. There's a lot going on here. Is there a definition or a case that says, for purposes of the statute, ICE or one of its predecessors qualifies as an agency? Candidly, Your Honor, I do not know the answer to that question. But it seems like there's a potential and serious gap there. Because I think for obvious, when statutes say who may ask, there's usually a reason for that. My understanding is that the IRS has gone through a comprehensive review of the legality of these requests. And, in fact, rejected a previous request from ICE when the signing head of the, you know, whoever signed the original request for data was not a high enough official. So the government's position is that Todd Lyons, as head of ICE, satisfies the requirement to receive that. I understand that you all are doing it. Right. I mean, you all are briefly saying that this is the same as the statute. I'm just asking for what that legal argument was when I see Congress being very careful about who can make. These are serious requests for obvious reasons. I mean, not just for privacy interests, but this is the blood of the federal government is revenue. And you don't want to do things that are going to impinge on revenue collection for obvious reasons. And so it's strange to me that there is no argument in the brief, no analysis as to how ICE qualifies. Like, when they have, you know, they have, like, subunits, like the administrator of the Drug Enforcement Administration. But they don't have any subunits within DHS or one of its predecessors. Your Honor, the government on this point, unfortunately, does not have a particular response to that. But I would maintain that the agency. Section 5E, and this could just be, let me ask a starter question, might make this easy. Is this MOU modeled on, put aside the opening sent by executive order, but all the operative terms. Are they modeled on an IRS form that, you know, when people want things, they fill out this form. They make all these promises about, things here about procedures and things like that. Is that unique or is there some form that this is modeled on? Because that might solve some of my questions about how this works. I believe that the MOU tracks the terms of 6103I2. And also in terms of the protection of the data once it's sent over is modeled after publication 1075. It describes the various procedures and policies in place to make sure that any disclosed information remains confidential. The MOU is not with ICE, right? The MOU is DHS? Correct. Yes. But then. And it's the secretary of DHS that executed the MOU. Correct. But then said, here's how this is going to work. ICE will make the request. That's 2A. ICE will make the request. IRS will respond to requests from ICE. The statute says the secretary will respond to requests from and then list the entities. So I don't think it matters who executed the MOU. The MOU said DHS isn't going to send in these requests. ICE is going to. What's happening with the requests? Currently? How are the requests articulated? I'm not sure I understand what you mean by articulated. Is it ICE that's sending a request as a component in their capacity as part of DHS? Because DHS, the secretary of DHS has given ICE the authority to ask for a particular item? Or how is a request under this MOU actually happening? The request is authorized pursuant to the MOU between DHS and IRS. And following ICE, assuming an appropriate official signs over the request, ICE sends the request to the IRS. And then the IRS sends, if it complies with the requirements, sends the information back to ICE. Okay. But is there any ambiguity in 2A that upon receipt by the secretary, this is Treasury for behalf of the IRS, which meets the requirements, a request from the head of any federal agency or inspector general, or in the case of the Department of Justice, let's say the Department of Justice entities, director of FBI, administrator of DEA, any U.S. attorney, any special prosecutor appointed under, and there's a particular provision there, heads of criminal strike task force. So Congress has said where the request has to come from. This MOU says the request is not coming from the secretary of DHS or anyone else on this list. The request is coming from ICE, and the IRS will respond to requests from ICE full stop. The request is coming from ICE pursuant to authority granted by DHS? Is there anything that says that there's sub-delegations like that? I'm not sure you're on it. There is not. I mean, Congress knows how to say that. It'll say that all the time when it wants to allow a delegation of authority further down the chain. And it seems like Congress right here was very careful not to do that. Then the release is to officers and employees of such agency who are personally and directly engaged in preparation for a judicial proceeding, an investigation that could result in such a proceeding or grand jury. How is this personally and directly engaged in showing being made when you're getting requests for 1.28 million addresses? The request was made for 1.28 million. As of now, only 47,000. How is that being? I'm just curious. I mean, I don't know. There's a form request that I can look at. The individual who is investigating the 1.28 million is a high-level assistant director, and it's at the earliest stages. That person is personally and directly engaged in the investigation. Yes. What does personally and directly mean here? I mean, at this stage of, you know, the very beginning of an aggressive criminal investigation, for a crime like the willful overstaying of a final removal order, the beginning of that investigation may look like a large spreadsheet. But I'm sorry. I'm sorry. I'm confusing things here. It's my fault. I'm talking about to whom the information is released, right? That's what it's personally and directly engaged in, right? So there has to be a showing that the information will be released only to officers and employees who are personally and directly engaged. Is there something in the MOU that does that, that ensures that when the information comes back, it only gets channeled to those involved in that individual's criminal investigation? Yes. The... Sorry. There's a lot in here. I took away something.   In Section 6 of the MOU, it describes the duties and responsibilities of ICE, which include keeping that information exclusive to people who are involved in that criminal investigation. But then he says ICE will use and redisclose the address information. And I'm just wondering how is... Take it out of this case. I just don't quite know how this is normally done and then how it's done here. Before all of this, when a request comes in, those requests usually identify the individual to whom the information will be released. And here, I believe the information is being released to... I'm just asking a question about, is that normally... Do they look like names of the agents? I'm not even talking about this case. A year ago... Right. Let's say... I don't know what they look like. That's why it's hard to know. If a single U.S. Attorney's Office were making this request for a bank robbery, I imagine that it would be sent to the individuals investigating that particular bank robbery. A U.S. Attorney would send it to... And it would... Would the request identify to whom it's going to? I'm not sure, Your Honor. Are there other MOUs with folks that are... I just don't... No. The MOU, I think, is a solution to a problem that may have occurred if you tried to do large-scale criminal investigations with individual agents all requesting from individual IRS agents and the information being spread... Individual agents can't request. Right, right. So that's not... Well, then sending... Sorry. I'm sorry. Sending up individual requests to the appropriate agency head to send over to IRS, which would involve, perhaps, a greater risk of diffusion of this confidential information. The MOU streamlines that approach. No, I think the whole point is that that's why I'm asking. I guess my assumption in reading the statute, if you say we're complying with every provision of the statute, would be the right person would send in the request, and a listed authorized person would send in the request, and then would say what information they want. And it's connection to proceedings, investigations, grand juries. And to whom the information should be disclosed. Right? The secretary shall disclose return information to. And so the request has to say to whom this information is going, and the only people it can go to are people who are personally and directly engaged in that. I assume in this case it's investigation. Investigations. Or maybe it's proceedings, too. I was assuming not grand juries, but you can tell me if I'm wrong. So that's what the statute says. So the only way the Secretary of Treasury would know to whom to release this information is the identification of individuals. The individuals. So a U.S. attorney's situation would say, please release this information to a USA Act person. A USA why? Maybe FBI agent Z, because they are personally and directly engaged in this investigation proceeding grand jury. How does that happen here when they, when someone sends in a 1.28 million? My understanding is that an individual who sent out that request is personally and directly engaged in that investigation. So the person who makes the request doesn't have to be personally and directly engaged. I think it would be a lot to imagine. I think personally and directly means something more than I'm the head of the agency. I don't think Congress was assuming here that. No, I'm sorry. The Attorney General was personally and directly engaged. So I'm assuming the head has to approve the request. That's why the list is here. And then they say, somebody sent it to me. I guess so much about paperwork. Sent it directly to ABC. I'm sorry. I think I'm. So what do these requests look like? I think we're confused. I mean, the individual who they're sending them. I'm not talking about the head of the agency request. I'm talking about the assistant director who's listed as the person who's personally involved. I believe his name is Jeffrey Williams in the reporting, but she is the individual that the information sent to. So his name is on every single one. So when there was a request for 1.28 million, his name was the person listed as the person. The information should go. And he was personally and directly engaged in investigating 1.28 million people at that moment. Yes. Okay. Can I ask you, I think it's related to this. There's this implementation agreement that's referred to in the materials that's in the record, but not in the appendix. Yeah, that's. Is some of this spelled out in the implementation agreement, how the mechanics of this work? The implementation agreement is the kind of highly technical modes of data transfers. So, yes, I think that the implementation agreement outlined some of the finer details about how this works in practice. And I would just say, and I apologize for not having the exact details on this. The conversation reflects kind of a larger difficulty with this case in that it's a pre-enforcement preliminary injunction. So the record before the court is really the MOU, the statute, and what was before the district court. So it's difficult for the government at this stage to explain exactly how this is being enforced when the lawsuit is challenging pre-enforcement. Well, yeah, I mean, these arguments weren't being made, but they're still foursquare in the statute. To the extent your argument in the MOU is consistent with the statute, that's why I'm asking if that's the argument you've made. And it's pretty important. You're all processing these things already. You told me about 4,000 you'd already turned over. So that's why the questions about what this looks like and how they're showing it doesn't seem like something the government can't know at this stage. Do we have an example in the record of an actual request and response under the MOU? No. Can you tell me again, just so I make sure I'm clear on it, what's your response to the appellant's claim that a court order is not necessary to get a mailing address in 6103.12? One of their claims is this can't be done without a court order. I think that that claim contradicts the plain text of 6103.I.2. 6103.I.2 mandates that pursuant to a non-tax criminal investigation, if a requesting agency sends over a valid request that return information and a tax person's identity is sent over, there's no mention of a court order in that provision. No statutory references to which they are pointing are irrelevant. I think they're citing some other provisions. Right, other provisions. So, for example, I believe 6103.I.5 refers to locating a fugitive. One, that occurs only when there's an outstanding arrest warrant for an individual. And 6103.I.5 allows a requesting agency to obtain far more information than 6103.I.2. So each of these provisions represents kind of the balance that Congress is putting out between law enforcement efficiency and the confidentiality of a taxpayer's information. There were different balances struck in 6103.I.2 than there were in 6103.I.5. 6103.I.5, they deemed a court order necessary, and 6103.I.2, they did not. What do you think under 6103.I.5 is the most useful information? It's hard to say. Is it? I mean, is it that hard? I mean, it does seem to me that under 6103.I.5, the most useful information to locate a fugitive would be where they're located. If they're being truthful with their returns in terms of their address, then maybe. But if not, then the employer's address might be more useful, or information about their bank may be more useful. I mean, it's hard to say exactly without knowing the specifics of that particular investigation. And I also wonder with respect to 6103.I.5, is the theory about how the information is going to be used by ICE slash DHS slash ICE, is it that the location is to find the person, or is it that the location is relevant to establish the 90 days, or both? I think it could be both. It may be. Because one of them would apply in general fugitive context. The other one would not. Correct. But under at least investigation into the willful overstaying of removal order, the location is useful outside of its locating properties because of the elements of the crime being investigated. Another question. And that is, my name is not particularly common, but there's a lot of people that have pretty common names. So, John Smith. So, if you get a request from, I assume it comes from someone authorized to send it, for John Smith at 333 Constitution Avenue. And that's the latest address the requester has, but it's been a while. And you run the search, and there has to be an awful lot of, and it's the only information they've given you, name and address. There has to be a lot of John Smiths with different addresses. How does, how do you not mistakenly turn over to the law enforcement agency the wrong John Smith? Or if it comes in and you've got multiple responses, you just say, we can't, we can't. Would that be a non-response, then you can't move on? I believe that, or I don't believe it's true, that in order to get the information from the IRS, there has to be an exact match with a name, either a name and an address that they have on file. So, for John Smith at 333, at some point, the IRS would have to see a John Smith who also put a 333 down as their address for an exact match between John Smith and the ITIN number that they were using to file taxes. But they're not providing an ITIN number, are they, when they request? I mean, that would definitely narrow things down. I believe that there is, there are terms under the request that you can get an exact match either for the name and address or the name and the ITIN number. I just wasn't under the understanding that they, maybe they have the ITIN number from something else. That makes sense if you have an ITIN number. But if you don't, and, you know, if it's not 333 Constitution Avenue, but it's a very large apartment building in New York City. Well. And you get, so you end up with lots of John Smiths that either currently or previously name and address matches. That's one thing that seems a little worse than when someone just says, I've got a name and maybe an updated address and I'd like to get. So, a couple of things. First, I don't know how many real overlaps there's going to be between specific apartment numbers and someone's name and address and address that they had handed over to the IRS. For the purposes of this information sharing agreement. There's a lot of people filing a lot of tax returns over a lot of years. And you have common names. Well. Maria Flores. Let's assume that there would be a ton of, let's call it, repeat names that are going to be overshared. The important part of the agreement is that they're being sent over for purposes of. I don't want my name sent over. I'm not the right person that they were asking for. That's why I'm trying to understand how you can very easily imagine more than one John Smith having lived at some point in the records of the IRS, even in the same apartment, in the same large apartment building. But that's not the address. You know, they provide a stale address. You've got a more recent, you've got lots of more recent. I mean, you're just going to be, I don't know how you protect people whose information shouldn't be turned over. We've been operating under the name and address sharing information that we're talking about. But the reality under the sharing that's going on now is that unless DHS sends over name, address, immigration court case number, date of final removal, they're not getting anything from IRS. I'm assuming you don't have records that are going to have those last two things. And so what you're going to be trying to match to is name and address. But IRS will not process the request for name and address unless they see name, address, immigration court case number, date of final removal order, statute that's being investigated, and specific reasons why the location is relevant. When you pull up a tax return that says John Smith X address, I'm assuming nothing on that tax return or all the other files you have on that person are going to have anything about an immigration proceeding. So I don't understand how that narrows down what your response is. So I understand what you're saying. I mean, you're complying with the other parts of the statute. They have to say what they're investigating inside the statute. I'm not disputing that. I'm just assuming they've done a proper request. Yeah. And you get lots of responses with that common name for that common address. Is that the end of it because you can't match it? Assuming that the request has already gotten through the door with the multiple other requirements to make sure that where the person was talking about. The person requesting has all that information, but all they've got is a name and an address. It's a super common name and a super common address. Because it sounds like you're searching all IRS files back for I don't know how many years. And so you're going to get three John Smiths of that address. What happens then? If there are. Or who at some point lived at that address is what I should say. I'm just wondering what protection is there for the taxpayer who is not the immigration enforcement John Smith. The protection there is on, I guess, let's say that there are duplicates. I'm not sure if there's a specific protection against. We got three hits on this, so we're going to run it down further. I'm not sure about that. But there is protection that the information remains confidential the entire time that it's being used by ice. And as soon as it's no longer being used for a criminal investigation, they have to destroy that address. Now, I'm going to have law enforcement breaking down my door. I would assume not, because ice would have. But ice will have all this return information about me because the search doesn't do anything to differentiate. I had thought you had multiple returns. That would be we can't tell. We don't know whose information to turn over, but it sounds like your answer is if we've got multiple people with that name and that address at any point in their history. You get all their return information and you leave it to them to sort it out. I am not representing that. There's not some procedure for dealing with duplicates. I just don't know one way or the other at this point. That's what's inherent. If they're giving, assuming maybe they have the more recent address and you have an older one. I mean, it could be the other way. But assuming they're giving you the last known address to them and assuming that you have the more recent one, that's going to. I assume you're going back and I don't know how many years back your files go for. Your records go for. I think if there's an address hit, there's an address hit. And I mean, the statute says that if you send over the address, IRS will send over the address that they have on file that matches that name and address. If I may just give a factual clarification here in terms of the way the IRS is processing these requests. The IRS is only responding and providing address information to ICE if there is either one of two things. Either an exact hit on the ITIN and the name or an exact match on the name and the address. And that's an exact match. That's not Brad for Bradley. That is an exact match on both ITIN because in many cases, ICE actually does have the ITIN of these individuals. That's actually the majority of the addresses that have been provided is where there's an exact match on both the ITIN and the name. If there's not an ITIN provided, then the IRS would instead search by name and address. And so we're going to need to search an exact match on both of those things that there would be an expiration date. I think it was self-fulfilled, but when it's self-fulfilled, nobody ITINs it. That's why I didn't know they would have those. And then two, if that name has been associated with that address at some point in that taxpayer's history, or only if it's the top address. That's correct. There would be an exact match. And it could be for a prior tax year. It wouldn't have to be the current year address. That's what I'm wondering about. Yes, Your Honor. Okay. Thanks. I appreciate that you're trying to help. Let's not have people just coming up to the podium and starting to speak without asking for the ability to do that because that's not normally what we do here. But I appreciate that you're trying to be of assistance. I see my time is up. If there are other questions, I'm happy to answer them. Do you know what the – oh, I don't want to stop at a lot of questions. I'm just glad I have an uncommon name. I know the feeling. My husband does not, so I don't put that in my documents. Do you know the purpose of I2C? The purpose of I2C? Why was there this determination made that taxpayer identity is something that needs to be carved out and should be turned over when tax return information generally would not be? Why was that determination made in 1970? The purpose – not to get into the minds of legislators back then, but the purpose that is kind of obvious from the terms of the statute is there's a balance between confidentiality and law enforcement efficiency. And in weighing that balance, the taxpayer identity fell on the side of law enforcement efficiency. Unlike other types of taxpayer return information. So your view is that I2C actually was affirmatively intended to make sure that the law enforcement agencies had – the requesting agency had a current address so that they could use the current address for criminal investigative purposes. I don't – I wouldn't necessarily say that it's the purpose to send over the current address, but to send over the address that the taxpayer had most recently sent to the IRS, the purpose of the carve out for that information is obviously to aid in the investigation of non-tax federal criminal violations. Because that might be germane – because the address might be germane to the criminal investigation. You don't think it was because – okay. Because there's some allusion to legislative history, and it doesn't – it doesn't look like a snippet of legislative history relates to actually making sure the law enforcement agencies have the address so they can use it for criminal investigative purposes. Now, it may be that the upshot is still that that can be done. I am not saying that it can't be done. I'm just saying that I guess I wasn't aware that the reason that I2C was enacted was specifically to make sure that the requesting agency has the address so they can use the address for criminal investigative purposes. I mean, it's located in a section of the tax code that is for the purposes of aiding in non-tax federal criminal investigations or proceedings. We think it should be read that way because it's in this provision, and that's the best inference from the text alone. I was just wondering whether there's something we know about the way this text came about that would shed additional light on that, but maybe perhaps not. I don't believe so, Your Honor. Okay. May I ask one more question? Yeah, of course. Sorry. This phrase, personally and directly, do you know if there's anything in the statute, in the regulation, manual, something that defines it? Because the statute has been around for quite some time. Or case law, you know, case law that defines what personally and directly means. I don't know of any further guidance on the meaning of that phrase. I think it's pretty plain that it's someone who is investigating criminal violations. Okay. That's all. There's no further questions? Thank you, Your Honor. Thank you, counsel. Mr. Joshi, we'll give you three minutes for rebuttal. Thank you, Your Honor. So I'll just make a few brief points. First, I'd like to draw the Court's attention to 6103M simply because there are various provisions in there which show a congressional provision. Congress is very concerned about disclosure of taxpayer address information. Oh, you said M as in? Mary. Especially subsections. M to make me feel good. You asked about the implementation agreement. At the time, this case was before the district court. The implementation agreement was not in the record. It was still under seal. This incident disclosed. And it has been posted in the docket in the Center for Taxpayer Rights Litigation before Judge Policatelli. So that is public now if you're interested in that. Counsel mentioned that the IRS does not, would not, requires an exact match of the address. That, I don't think, is either in the MOU or the implementation agreement. And I'll point to page 54 of the government's brief where they say, even if the memorandum were rescinded tomorrow, the IRS would still be required by statute to provide address information to ICE upon receipt of a valid request. So the government's position of the MOU is sort of window dressing, but through the statute that's doing the work. And under their interpretation of the statute, they can, they would disclose information, address information in bulk upon request. And so it's not just limited to orders of removal, statutes such as the failure to register, the reentry after removal, other criminal statutes. A lot of these criminal statutes, the difference between innocent conduct and non-criminal conduct and criminal conduct is a willfulness requirement. And they, you know, DHS or ICE or whoever is responsible for, you know, asking for this information, doesn't have to prove to the IRS there's evidence of willfulness. They can, they will say in the IRS, one question, we are doing this investigation for these types of crimes, and if that would be sufficient for them to get location information on taxpayers in bulk. So there's no real limiting principle if they're allowed to implement I-2 in the way that they have done, announced that they will do in the MOU. And I will say the other point about data errors, when there is the traditional situation where the prosecutor sends a one-off request to the IRS, there's communication back and forth. I'll point to our brief at page 40, which notes that up until this year, all of these requests have involved prosecutors seeking information under I-2. And when you have these mass process requests that are not looked over by an individual, you do run the risk of some data errors. I'm out of time. If there's any other questions, I will have to answer them. The implementation document, you said it's in the record in that other case? Yes. I mean, I think we can just, you can just introduce it into the appellate record in this one. I'm happy to follow up. Yes. Okay. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan; Millett; Edwards